**UNITED STATES DISTRICT COURT FOR**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION,<br>6225 W. Sunset Blvd. 21st Floor<br>Los Angeles, CA, 90028<br><br>   Plaintiff,<br><br>  v.<br><br>PRINCE GEORGE'S COUNTY<br>and PRINCE GEORGE'S COUNTY,<br>HEALTH DEPARTMENT, SUBURBAN<br>MARYLAND RYAN WHITE PART A<br>ADMINISTRATIVE AGENCY<br>1701 McCormick Drive, Office #216,<br>Largo, Maryland 20774<br><br>PRINCE GEORGE'S COUNTY OFFICE OF<br>CENTRAL SERVICES<br>1400 McCormick Drive, Suite 336,<br>Largo, Maryland 20774<br><br>-And-<br><br>PRINCE GEORGE'S COUNTY<br>HEALTH DEPARTMENT<br>1701 McCormick Drive, Office #216,<br>Largo, Maryland 20774<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. _____ |

**COMPLAINT FOR TEMPORARY, PRELIMINARY, AND PERMANENT**
**INJUNCTION AND DAMAGES**

Plaintiff, AIDS Healthcare Foundation ("AHF" or "Plaintiff") brings this action against

defendant Prince George's County, Prince George's County Health Department Suburban

Maryland Ryan White Part A Administrative Agency, Prince George's County Office of Central

Services, and Prince George's County Health Department (collectively, "Defendants" or "PG

County"), and alleges as follows:

## PARTIES

1.      Plaintiff, AIDS Healthcare Foundation ("AHF"), is a non-profit organization residing in Los Angeles, California. Its principal place of business is located at 6255 W. Sunset Boulevard, 21st floor, Los Angeles, California, 90028. Established in 1987, AHF is currently the largest non-profit provider of specialized HIV/AIDS medical care in the United States. Specifically, AHF provides large-scale HIV counseling and testing services, early intervention services, HIV medical care, medical case management and pharmacy services, referrals and linkage to ancillary services and innovative client retention protocols.

2.      Defendant Prince George's County ("PG County"), acting by and through the Agency, Roland L. Jones, the Office of Central Services and the Prince George's County Health Department is located in Maryland.

3.      Defendant Prince George's County Health Department, Suburban Maryland Ryan White Part A Administrative Agency (the "Agency"), is located at 1701 McCormick Drive, Office #216, Largo, Maryland 20774.

4.      Defendant Prince George's County Office of Central Services ("Office of Central Services") is located at 1400 McCormick Drive, Suite 336, Largo, Maryland 20774.

5.      Defendant Prince George's County Health Department (the "Health Department") is located at 1701 McCormick Drive, Office #216, Largo, Maryland 20774.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, because AHF and PG County are citizens of different states and the amount in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000.00).

2

7.      Additionally, this Court has jurisdiction based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims include a claim under the federal constitution.

8.      This court further has subject matter jurisdiction under 28 U.S.C. § 2201 because AHF seeks a declaratory judgment against PG County.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 because the defendant is located in this judicial district.

## NATURE OF PROCEEDING

10.      This action arises from PG County's violation of due process requirements and its own regulations in connection with both the Request for Application process and a bid protest filed by AHF. By failing to comply with notice requirements, delaying in the setting of a hearing, and refusing to produce documents relevant to the bid process, Defendants have compromised, if not completely derailed, AHF's ability to obtain a fair and unbiased assessment of its application and to obtain the remedy it seeks in its bid protest. Such conduct, aside from being unlawful, poses a serious and imminent threat of irreparable harm to AHF's mission in Maryland and elsewhere. In order to prevent further irreparable harm, AHF requests that the Court enter an injunction to protect AHF's rights while its bid protest is pending.

## FACTUAL BACKGROUND

### I.      The Request for Applications.

11.      On or about July 19, 2013, the Agency issued a Request for Applications ("RFA"), announcing that it expected to have approximately $2,913,353.00 available in Ryan White Part A Grant funds[1] ("Grant Funds") to allocate to qualified applicants. A true and correct

---

[1] The legislation known as Ryan White Treatment Extension Act of 2009 was enacted to create and maintain a system of services that achieves improved health status outcomes for people with HIV/AIDS. *See* Exh. A. Pursuant

copy of the RFA is attached hereto as **Exhibit A**. The RFA sought applicants who were equipped to provide a variety of clinical and medical support services to indigent, uninsured and underinsured persons who are living with HIV/AIDS in the Suburban Maryland jurisdiction, which includes Prince George's, Montgomery, Frederick Charles and Calvert Counties.  Exh. A, p.2.

12.     AHF is an experienced Ryan White provider in other jurisdictions and has a proven record of sustainable service provision.

13.     In an effort to obtain Ryan White awardee status in Maryland, AHF submitted an application to the Agency in response to the RFA on September 18, 2013 ("Application"). The 84-page (excluding exhibits) Application requested $108,883.00 of Grant Funds to provide direct outpatient medical care and medical case management, AIDS pharmaceutical assistance, and non-medical case management to those infected with HIV/AIDS.  Moreover, the application made clear that AHF already operated a clinic in Prince George's County; already provided such services to people living with HIV/AIDS; and proposed to greatly expand such services using Grant Funds.  A true and correct copy of AHF's application is attached hereto as **Exhibit B**.

14.     Five other entities submitted applications in response to the RFA.  On or about February 28, 2014, the Agency notified these five applicants of its intent to award them with Grant funds.[2]

15.     The Agency notified AHF that it did not qualify for any funds on March 12, 2014.

_____

to this Act, the United States Department of Health and Human Services, Health Resources and Service Administration makes Ryan White Part A Grant funds available to various counties for disbursement to entities that provide medical services to individuals with HIV/AIDS.

[2] The five other entities and the amounts PG County has indicated were awarded are as follows: Prince George's County Health Department Division of Family Health Services, HIV/STD & Prevention ($2,721,318); Montgomery County Department of Health & Human Services ($2,087,614); Greater Baden Medical Services ($926,519); Frederick County Health Department ($230,324); Children's National Medical Center ($667,825). Curiously, the sum total of these awards greatly exceeds the amount of Grant Funds purportedly available under the RFA. PG County has not produced any documents or provided any explanation regarding this discrepancy.

II.     **AHF's Bid Protest.**

16.     Soon after receiving notice that it was categorically denied Grant Funds, AHF sought to appeal the Agency's decision, obtain relevant documents, and participate in a hearing.

17.     Over the next few months, PG County repeatedly and continuously delayed production of key documentation, provided guidance regarding the protest that it later rescinded, and withheld information from AHF, thereby depriving AHF of its due process rights and a fair and impartial proceeding.

18.     For example, after initially providing different information, on April 17, 2014, Defendants' counsel Raymond Santiago informed AHF that an applicant must file a request for a more "elaborate explanation and debriefing" with the Prince George's County Health Department as the first step in the dispute resolution process.

19.     Then via email dated April 28, 2014, Mr. Santiago retracted his instructions of April 17, 2014, instead indicating that AHF's appeal would be governed by PG County's procurement regulations ("County's Regulations"), and specifically, Chapters XXV and XV therein. Mr. Santiago attached a copy of those chapters of PG County's Regulations to his email. Mr. Santiago also specifically represented that "the County must follow its own regulations." A true and correct copy of Mr. Santiago's April 28, 2014 email is attached hereto as **Exhibit C**. A true and correct copy of Chapters XV and XXV of PG County's Regulations are attached hereto as **Exhibit D**.

20.     On April 30, 2014, AHF submitted its bid protest ("Bid Protest") to the Office of Central Services pursuant to PG County Regulations. A true and correct copy of the Bid Protest is attached hereto as **Exhibit E**. The Bid Protest claimed that PG County's decision to deny its application was arbitrary and capricious. *See* Exh. E, ¶ 3. Specifically, AHF observed that it was the only organization not funded in any amount, despite: (1) offering 20 years of experience in

providing HIV/AIDS care and treatment to Ryan White populations; (2) proposing to add a new service site in the area to increase patient access care; (3) the dearth of providers in the area to address the overwhelming patient need; and (4) representations made by the Defendants to AHF that it would be welcome in Prince George's County. *See id.* Given the failure of the Agency to award any funds to AHF, the only plausible explanation could be that, "conflicts of interest," "scoring errors" or "other considerations outside the scope of a fair award process" were "at play." *See id*.

21.     As permitted by Chapter XXV, Section H of PG County's Regulations, the Bid Protest requested a hearing and, in order that AHF could properly prepare for the hearing, requested of the Defendants to produce "all documents" which "bear upon the substance of the protest."  These document requests included, but are not limited to:

- A list of the RFA evaluators;

- Conflict of Interest Statements;

- Scoring Sheets for all RFA bidders;

- Evaluations of each RFA bidder;

- Letters sent to all RFA bidders informing them of the decision to award/not award; and

- Amounts awarded to each RFA bidder.

III.     **The Discovery Dispute and PG County's Continued Delay Tactics.**

22.     Defendants initially failed to produce certain requested documents to AHF. Thus, on May 23, 2014, undersigned counsel sent a letter to the Defendants, renewing its request for the documents and explaining that a fair hearing could not possibly be held unless and until AHF

receives and reviews the requested documents. A true and correct copy of the May 23, 2014 letter is attached hereto as **Exhibit F**.

23.     On or about June 3, 2014, Roland L. Jones ("Jones"), Director of the Prince George's County Office of Central Services and Purchasing Agent, sent undersigned counsel a letter, acknowledging the receipt of his letter, indicating that a hearing date would be scheduled and agreeing to produce the requested documents. A true and correct copy of the June 3, 2014 letter is attached hereto as **Exhibit G**.

24.     On July 15, 2014, over a month after undersigned counsel received the June 3, 2014 letter, the Defendants produced *some*, but not all, of the requested documents.  Specifically, the Defendants withheld, and continue to withhold, the documents that are most essential for AHF to substantiate its Bid Protest, including the evaluation forms, contracts, and RFA responses of the successful RFA bidders.

25.     On July 25, 2014, undersigned counsel sent counsel for the Defendants, Ms. Tracy Benjamin, a letter explaining why AHF was entitled to the withheld documents under PG County's Regulations and otherwise.   By email dated August 12, 2014, Ms. Benjamin also agreed to comply with PG County Regulations and provide those documents. A true and correct copy of the August 12, 2014 email from Ms. Benjamin is attached hereto as **Exhibit H**.

26.     Despite Ms. Benjamin's representation and Mr. Jones's representation over two months prior in his June 3, 2014 letter, to date, the Defendants have yet to produce these documents. In fact, on September 24, 2014, PG County, through an email from Ms. Benjamin, reversed its position and informed AHF that it would not produce any additional documents.

IV.    **AHF Uncovers Evidence of Conflicts of Interest and Scoring Errors in the Evaluation Process.**

27.    Over the course of this discovery dispute, AHF and undersigned counsel reviewed the few and less-essential documents the Defendants were willing to produce, and, by that alone, uncovered various improprieties in the evaluation process. For instance, two of the evaluators, Maurice Evans and Larry Hogue stated in their evaluations that AHF provided no information in response to some of the RFA's requests, while, as an empirical matter, such information was in fact provided. True and correct copies of Mr. Evans' and Mr. Hogue's evaluations for AHF as provided by Defendants are attached hereto as **Exhibits I and J,** respectively.

28.    Additionally, those same evaluators flatly refused to review the budgetary information provided in AHF's application.

29.    Aside from scoring errors, various conflicts of interest exist on the part of some of the evaluators. For instance, Mr. Hogue's resume states that he was affiliated with various AIDS health organizations at the time he conducted his evaluation, yet, he failed to disclose such affiliations - as he was required to - on the conflict of interest disclosure form provided to him by the Agency. True and correct copies of Mr. Hogue's resume and his signed conflict of interest form as provided by the Defendants are attached hereto as **Exhibit K**. In fact, the resume Mr. Hogue submitted to the Defendants is only current as of 2010, *see* Exh. K, indicating that the Defendants neglected to ensure that Mr. Hogue did not have conflicts of interest at the time he performed his evaluations in 2013.

V.    **PG County's Decision to Execute Contracts without Notifying AHF.**

30.    Under County Regulation XXV, I, once the Protest was submitted, the Defendants were prohibited from executing the contracts with the successful applicants until the Bid Protest was resolved ("Stay of Procurement"). *See* Exh. D, Sec. I (1). One exception to this general rule

exists where "items are urgently required and declared as an emergency of a public exigency purchase by PG County Purchasing Agent." *See* Exh. D, Sec. I (a). Even in such "exigent" circumstances, however, "written notice of the determination shall be given to the protestor and other concerned persons." *See* Exh. D, sec. I (2).

31.     Indeed, in the Bid Protest itself, AHF instructed the Agency to refrain from issuing final awards to the successful applicants until the BidProtest is resolved, pursuant to Chapter XXV, Sec. I of PG County's Regulations. *See* Exh. E, ¶ 4.

32.     Under PG County's Regulations, the "County Purchasing Agent" means the "County's Director of Central Services," *see* Exh. D, Chapter III, ¶ 41.  At all times relevant to this case,  Jones was PG County Purchasing Agent.

33.     AHF, having not received any notice of a determination to execute contracts in the months of June, July and August, assumed the Stay of Procurement was in place and continued to diligently, if unsuccessfully, seek documents from the Defendants during that period.

34.     Moreover, in abundance of caution, undersigned counsel, sought to confirm with various representatives of the Defendants that the contracts had not been executed.  Specifically, on or about July 15, 2014, undersigned counsel spoke with Eboni Blair, Executive Administrative Aide at the Director's Office of the Office of Central Services, who advised that the contracts had not been executed and saying she would "get back to us on that." Subsequently, on or about July 25, 2014, undersigned counsel spoke with Tracy Benjamin, counsel for PG County, who also indicated that no contracts had been executed and was going to "confirm" this information. Neither Ms. Blair nor Ms. Benjamin ever "got back to" AHF in the months of July and August to advise that contracts had been executed.

35.     On the basis of these representations and not having received written notice of a determination to execute contracts, AHF proceeded with the discovery dispute and maintained its position that the hearing on its Bid Protest should be held after all the requested documents were received.

36.     On August 7, 2014, undersigned counsel sent an email to Ms. Benjamin, asking for written confirmation that no contracts had been executed. A true and correct copy of the August 7, 2014 email is attached hereto as **Exhibit L**. It was not until September 3, 2014 that Ms. Benjamin first informed undersigned counsel that all five contracts had been executed.  A true and correct copy of Ms. Benjamin's September 3, 2014 email is attached hereto as **Exhibit M**.

37.     On September 5, 2014, undersigned counsel wrote an email to Ms. Benjamin, expressing his surprise at the fact that the contracts were executed given her prior representation that they were not. Ms. Benjamin replied that at the time of her earlier representation, she had received information that the contracts were not yet executed, but, at some point subsequent to her receiving that information, the contracts were executed. Ms. Benjamin then offered to provide a timeline showing when the above events occurred. A true and correct copy of the September 5, 2014 correspondence between undersigned counsel and Ms. Benjamin is attached hereto as **Exhibit N**.

38.     On September 15, 2014, Ms. Benjamin sent undersigned counsel a copy of Defendants's written determination to execute the contracts on the basis of the "public exigency" exception provided in PG County Regulations (the "Determination"). A true and correct copy of the September 15, 2014 email from Ms. Benjamin is attached hereto as **Exhibit O**. A true and correct copy of the Determination to execute the contracts is attached hereto as **Exhibit P**.

39.     The Determination is dated July 24, 2014, *see* Exh. L, indicating that nearly two months passed before AHF received notice of the decision to execute the contracts.

40.     The Defendants' failure to notify AHF of the Determination constitutes a blatant violation of the Defendants' own regulations and, moreover, is highly prejudicial to AHF.

41.     AHF was told that the awards had been stayed pending the outcome of the protest and relied on those representations. The continued delays and failure to provide information and documents have created a strong likelihood that Grant Funds will be disbursed before PG County provides AHF with a fair hearing. The required written notice would have at least given AHF the opportunity to immediately challenge the rationality of the Determination *before* Grant Funds were disbursed to the various awardees.

42.     Indeed, with every passing day, AHF's ability to obtain an appropriate remedy on its Bid Protest – i.e., a portion of the Grant Funds – diminishes, if it has not been eliminated already.[3]

### COUNT I — Maryland Administrative Procedures Act
### (Pursuant to Md. State Government Code Ann. § 10-222(h)(3)(ii))

43.     Plaintiff hereby incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

44.     Under Maryland's Administrative Procedures Act, an administrative decision may be reversed or modified if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision exceeds the statutory authority of the final decision maker.  *See* Md. State Government Code Ann. § 10-222(h)(3)(ii).

---

[3] The Defendants have refused, despite AHF's request, to inform AHF as to whether or not all the Grant Funds have been disbursed pursuant to the executed contracts.  On September 17, 2014, AHF filed a second protest with the Office of Central Services for Defendants' failure to notify AHF of the Determination, and in connection with that protest, AHF requested, *inter alia*, copies of the executed contracts to determine whether Grant Funds are still available. AHF has also been forced to submit a request for said documents pursuant to the Maryland Public Information Act.

45.     AHF has a substantial right to a remedy should its Bid Protest be successful.

46.     That right has been prejudiced by the Defendants' decision to execute contracts without notifying AHF of the decision to do so.

47.     The Defendants' decision to override the Stay of Procurement and execute the contracts without notifying AHF thereof exceeds its statutory authority because under PG County's Regulations the Defendants must provide written notice of its that decision to AHF.

**WHEREFORE**, as to Count I of this Complaint, AIDS Healthcare Foundation prays for judgment in its favor and against the Defendants and, as relief, seeks the following:

A.   An Order enjoining and restraining the Defendants from further disbursing Grant funds while the Bid Protest is pending; and

B.   An Order modifying the Determination by requiring that $108,883.00 be placed in escrow and not disbursed to any person until AHF's Bid Protest has been resolved.

### COUNT II — Federal Declaratory Judgment Act
### (Pursuant to 28 U.S.C. § 2201(a))

48.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

49.     There exists an actual justiciable controversy between the parties of sufficient immediacy and reality to warrant declaratory relief from this Court.

50.     Specifically, the parties dispute whether PG County had the right to execute the contracts and disburse funds without giving notice to AHF.

51.     PG County's Regulations obligated the Defendants to notify AHF of its determination to execute the contracts to the awardees.

52.     PG County's failure to follow its own regulations has created a likelihood that there will be no funds available to award AHF should it be successful on its Bid Protest.

53.     By this Court determining the parties' respective rights and remedies on this issue will terminate this controversy.

**WHEREFORE**, as to Count II of this Complaint, AHF prays for judgment in its favor and against the Defendants and, as relief, seeks the following:

A.  A declaratory judgment that AHF has the right to a remedy should it be successful on its Bid Protest;

B.  A declaratory judgment that the Defendants' delays, decision to override the Stay of Procurement without giving written notice of the decision to AHF, and failure to produce documents bearing on the Bid Protest are violations of PG County's Regulations and other applicable Maryland and federal law;

C.  A declaratory judgment that said violations have prejudiced AHF's ability to obtain a remedy;

D.  An Order enjoining and restraining the Defendants from further disbursing Grant Funds while the Bid Protest is pending;

E.  An Order requiring the Defendants to immediately place $108,883.00 in escrow until the Bid Protest is resolved to ensure that a remedy will be available to AHF should it be successful on its Bid Protest; and

F.  Awarding Plaintiff pre- and post-judgment interest, attorneys' fees permitted by law, and such other and further relief, declaratory or otherwise, as the Court may deem just and proper.

## <u>COUNT III</u> — Promissory Estoppel / Detrimental Reliance

54.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

55.     On a number of occasions in the month of July, Defendants represented to AHF that no contracts had been executed with the successful applicants.

56.     AHF relied on these representations by continuing to engage in the discovery dispute with counsel for Defendants in July, August and into September.

57.     Defendants knew, or had a reasonable expectation that the representations would induce AHF to continue engaging in the discovery dispute prior to the hearing on the Bid Protest and would, in fact, delay such hearing.

58.     Defendants' representations that the contracts were not executed did in fact induce AHF to continue engaging in the discovery dispute during July, August and into September.

59.     AHF's reliance on the Defendants' representations was detrimental to AHF because Grant Funds have been, and continue to be, expended over the course of the discovery dispute and there may now be no Grant Funds remaining by the time the hearing on the Bid Protest is held.

**WHEREFORE**, as to Count III of the Complaint, Plaintiff AIDS Healthcare Foundation respectfully requests that this Court enter an Order:

A.  Enjoining and restraining the Defendants from further disbursing Grant funds while the Bid Protest is pending;

B.  Requiring the Defendants to immediately place $108,883.00 in escrow until the Bid Protest is resolved to ensure that a remedy will be available to AHF should it be successful on its Bid Protest; and

C.  Entering a monetary judgment against the Defendants, jointly and severally, in an amount to be proven at trial, for all compensatory damages suffered by AHF as a

result of its reliance on Defendants' representations that the contracts were not executed.

## COUNT IV — Violation of Due Process
### (Pursuant to Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment to the United States Constitution)

60.     Plaintiff hereby incorporates the proceeding paragraphs as if fully set forth herein.

61.     Procedural due process, as guaranteed by Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment to the United States Constitution, requires administrative agencies performing adjudicatory or quasi-judicial functions to observe the basic principles of fairness as to parties appearing before them.

62.     PG County's Regulations provide that qualified applicants are eligible for  Grant Funds.

63.     AHF is a qualified applicant under the RFA criteria and has a property interest in the Grant Funds.

64.     AHF further has an interest in and a right to a full and fair hearing and a determination on its Bid Protest, which includes an available remedy should it be successful on its Bid Protest.

65.     AHF also has an interest in receiving and the right to receive notice of the Determination, as required by PG County's Regulations.

66.     The Defendants have failed to ensure that AHF receives a fair hearing on its Bid Protest by delaying the discovery process in connection therewith and, during the delay, executing the contracts and disbursing Grant Funds without notice to AHF.

67.      Additionally, in doing so, the Defendants have deprived AHF of its statutory interest in and right to notice of the Determination.

68.     This conduct is fundamentally unfair and prejudices AHF's opportunity to obtain an adequate remedy should it be successful on its Protest.

**WHEREFORE**, as to Count IV of the Complaint, Plaintiff AIDS Healthcare Foundation respectfully requests that this Court enter an Order:

A.  Enjoining and restraining the Defendants from further disbursing Grant funds while the Protest is pending;

B.  Requiring the Defendants to immediately place $108,883.00 in escrow until the Protest is resolved to ensure that a remedy will be available to AHF should it be successful on its Protest; and

C.  Enter a monetary judgment against the Defendants, jointly and severally, in an amount to be proven at trial, for all damages suffered by AHF as a result of the Defendants' violations of AHF's due process rights.

### COUNT V — Violation of Maryland Common Law
### (Pursuant to *Accardi* Doctrine)

69.     Plaintiff hereby incorporates the preceding paragraphs fully set forth herein.

70.     Maryland common law has adopted the doctrine first announced in *Accardi v. Shaughnessy*, 347 U.S. 260 (1954) which provides that when an agency fails to follow its own procedures or regulations that agency's actions are generally invalid (the '*Accardi* doctrine'). *See Pollock v. Patuxent Inst. Bd. of Review*, 374 Md. 463 (2003) (adopting the *Accardi* Doctrine).

71.     The doctrine general rule applies where the agency rule or regulation violated affects individual rights or confers important procedural benefits.

72.     AHF has the right to a remedy should it be successful in its Bid Protest.

73.     Being notified of the Defendants' decision to execute contracts and disburse funds while the Bid Protest is pending is an important procedural benefit for AHF.

74.     The Defendants' decision to execute the contracts without providing notice of the decision to AHF has prejudiced AHF's right to a remedy and has deprived AHF of an important procedural benefit.

75.     The Defendants' failure to produce documents and repeated delay tactics violate the applicable regulations and have prejudiced AHF's rights, procedural and otherwise.

**WHEREFORE**, as to Count V of the Complaint, Plaintiff AIDS Healthcare Foundation respectfully requests that this Court enter an Order:

A.  Vacating the Defendants' decision to execute the contracts and disburse Grant funds without notifying AHF;

B.  Enjoining and restraining the Defendants from further disbursing Grant funds while the Protest is pending; and

C.  Requiring the Defendants to immediately place $108,883.00 in escrow until the Protest is resolved to ensure that a remedy will be available to AHF should it be successful on its Bid Protest.

**COUNT VI — Breach of Implied Contract to Deal with All Bidders Fairly**

76.     Plaintiff hereby incorporates the proceeding paragraphs as if fully set forth herein.

77.     By soliciting bids for the Ryan White project the Defendants impliedly promised that it would give honest and fair consideration to all bids received and would not reject any bid arbitrarily or capriciously.

78.     Defendants breached this implied contract when it did not evaluate AHF's Application fairly and honestly nor in accordance with PG County's Regulations.  Defendant's failure to consider and award points for several sections of AHF's Application because the font was purportedly too small, was arbitrary and capricious.

79.     Defendants further breach this implied contract when they failed to notify AHF, pursuant to PG County's Regulations, that they had executed the contracts, despite AHF's repeated requests for confirmations that the contracts had not been executed, and Defendants' representations that they were unexecuted.

80.     Defendant's failure to deal with AHF honestly and fairly has severely prejudiced AHF's ability to obtain Grant Funds, Ryan White status, and a remedy should it prevail on its Bid Protest.

**WHEREFORE**, as to Count VI of the Complaint, Plaintiff AIDS Healthcare Foundation respectfully requests that this Court enter an Order:

A.  An Order requiring Defendants to void the contracts awarded pursuant to the RFA; and

B.  An Order requiring Defendants to reissue the RFA and to evaluate bids in accordance with County Regulations.

Dated: September 25, 2014                    Respectfully submitted,


                                             /s/_____
                                             Donald E. English, Jr. (Federal Bar No. 27534)
                                             Joshua J. Gayfield (Federal Bar No.29189)
                                             Alfred M. Wurglitz (Federal Bar No. 13661)
                                             Menachem Lanner (Federal Bar No. 29808)
                                             Yodeski Y. Acquie (Federal Bar No. 19297)
                                             MILES & STOCKBRIDGE P.C.
                                             100 Light Street
                                             Baltimore, Maryland  21202-1487
                                             (410) 385-3850
                                             *denglish@milesstockbridge.com*
                                             *jgayfield@milesstockbridge.com*

                                             *Counsel for Plaintiff, AIDS Healthcare Foundation*